UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


PEDRO "PETE" BENEVIDES,          :
    Petitioner,                  :
                                 :  Case No.   6:17-cv-1944-Orl-31KRS
    v.                           :               (6:13-cr-234-Orl-31KRS)
                                 :
UNITED STATES OF AMERICA,        :
    Respondent.                  :


**RESPONSE IN OPPOSITION TO PETITIONER'S
MOTION TO VACATE, SET ASIDE,
OR CORRECT SENTENCE, PURSUANT TO 28 U.S.C. § 2255**

Pursuant to 28 U.S.C. § 2255, the Rules Governing Section 2255

Proceedings, and this Court's Order dated April 26, 2018, the United States

responds in opposition to Pedro "Pete" Benevides' (Benevides) motion to

vacate, set aside, or correct sentence as follows.

## I.    STATEMENT OF CASE

On September 19, 2013, a federal grand jury returned a nineteen count

indictment charging Benevides with one count of conspiracy to commit bank

fraud, in violation of 18 U.S.C. § 1349 (Count One), nine counts of bank

fraud, in violation of 18 U.S.C. § 1344 (Counts Two through Ten), and nine

counts of false statements to a federally-insured financial institutions, in violation of 18 U.S.C. § 1014 (Counts Eleven through Nineteen).   Doc. cr-1.[1]

On July 14, 2014[2], Benevides pled guilty to conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count One), pursuant to a written plea agreement with the United States.[3]   Docs. cr-48, 49, 56, 58.

On April 14, 2015, this Court sentenced Benevides to 108 months in federal prison, followed by 3 years of supervised release, and a forfeiture money judgment of $44,059,595.   Docs. cr-87, 91, 92.   On June 24, 2015, the Court held a restitution hearing, and by separate order on July 9, 2015, the Court ordered that Benevides pay over $10 million in restitution.   Docs. cr-121, 127.

Benevides timely appealed his sentence, arguing that the United States violated the terms of his plea agreement.   However, the Eleventh Circuit

---

[1]Docket references to Benevides' underlying criminal case are denoted herein as "Doc. cr-__," while docket references to the instant civil proceeding are denoted herein as "Doc. cv-__."

[2] A second plea agreement was filed at Doc. cr-58 and a hearing was scheduled on July 15, 2014, because the original plea agreement incorrectly listed 21 counts. The new plea agreement and the hearing clarified and affirmed that Benevides was aware that there were only 19 counts and that counts 2-19 would be dismissed by the United States.

[3] All of the remaining counts were dismissed pursuant to the written plea agreement.   Doc. cr-58 at 2.

affirmed his sentence on May 27, 2016.   Doc. cr-134.   Finally, Benevides

filed a *writ of certiorari* with the United States Supreme Court, which the Court

denied on November 14, 2016.   Doc. cr-140.

On November 13, 2017, Benevides filed the instant section 2255

motion.   Doc. cv-1.   Benevides cites two grounds for relief in his section

2255 motion.   First, that trial counsel was ineffective by advising him to

stipulate to a forfeiture amount of $44,059,585.   Second, trial counsel was

ineffective because trial counsel advised him that he would serve a minimal

prison sentence, retain $3 million, and retain a Lamborghini.

On April 26, 2018, the Court ordered the United States to file a

response to the section 2255 motion within 90 days from the date of the Order.

Doc. cv-4.   However, on July 16, 2018, and August 31, 2018, the United

States filed motions for extension of time to file the response[4], which the Court

subsequently granted.   Docs. cv-6, 7, 8, 9, and 10.   Therefore, the response is

currently due on October 29, 2018.   Doc. cv-10.

---

4 The United States filed both extensions in good faith in order to obtain a
judicial waiver of the attorney-client privilege so that trial counsel, Charles
Greene, could provide an affidavit to rebut Benevides' allegations.   That
affidavit is attached as Exhibit A.

Because Benevides first ground for relief is not cognizable and is procedurally defaulted and he cannot establish either deficient performance or prejudice for either ground for relief, his claims of ineffective assistance of counsel must be denied.

## II.    STATEMENT OF FACTS

According to the factual basis in Benevides' plea agreement, beginning in 2005 and continuing until September 2008, Benevides conspired with others to execute, or attempt to execute, a scheme to obtain money and funds owned, or under the control, of several different federally insured banks by means of materially false and fraudulent representations, in violation of 18 U.S.C. §§ 1344 and 1349.

Generally, and without detailing every aspect of the fraudulent scheme or limiting the United States' ability to assert additional facts as necessary, the fraudulent scheme operated as follows:

Benevides controlled at least seven Florida companies, which operated in the Middle District of Florida.   As part of this conspiracy, Benevides obtained funds, loans, mortgages, and lines of credit from several federally-insured financial institutions.   In order to obtain these funds, Benevides, or others working on his behalf, submitted documents to these financial

4

institutions that contained materially false and fraudulent representations regarding the income and assets of the person or entity in whose name Benevides sought to obtain the funds.   The affected financial institutions relied on these fraudulent representations when they provided funds to Benevides, or others acting on his behalf.

In total, Benevides obtained approximately 20 loans, mortgages, and lines of credit, totaling approximately $44,059,565.   Benevides used these funds for his own purposes.   In addition, the total loss attributable to Benevides was between $2,500,000 and $20,000,000.   Finally, Benevides derived more than $1,000,000 in gross receipts from at least one of the affected financial institutions.

A more thorough explanation of Benevides' fraud is found in his plea agreement, the Pre-Sentence Investigation Report, and the sentencing memorandum of the United States. Docs. cr- 48, 58, 73, 77.

## III.   MEMORANDUM OF LAW

### A.   TIMELINESS

Benevides' conviction became final on November 14, 2016, when the United States Supreme Court denied his *writ of certiorari*.   *See Clay v. United States*, 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003).   As such,

Benevides had until November 13, 2017, to file his section 2255 motion.

Benevides filed his motion on November 13, 2017.   Thus, his motion is

timely.   *See* 28 U.S.C. § 2255(f)(1).

### B.    COGNIZABILITY

Benevides' claims regarding forfeiture are not cognizable.   Section 2255

authorizes an attack on a sentence on four grounds: (1) it was imposed in

violation of the Constitution or laws of the United States; (2) it was imposed

without jurisdiction; (3) it exceeds the maximum authorized by law; or (4) it is

otherwise subject to collateral attack.   28 U.S.C. § 2255.   A challenge to a

forfeiture money judgment is not cognizable in a § 2255 proceeding.   *Saldana*

*v. United States*, 273 F.App'x 842, 844 (11th Cir. 2008); *Gonzalez v. United States*,

No. 2:09-cv-786-FtM-29DNF, 2:05-cr-119-FtM-29DNF, 2011WL 5080343

(M.D. Florida October 25, 2011), *7.   Therefore, Benevides' first ground for

relief must be denied.

### C.    PROCEDURAL DEFAULT

"Under the procedural default rule, a defendant generally must advance

an available challenge to a criminal conviction or sentence on direct appeal or

else the defendant is barred from presenting that claim in a § 2255

proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (citing

*McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001)).   Claims that are ripe for direct appeal but not raised are procedurally defaulted, and may not be raised for the first time in a motion to vacate under section 2255. *Lynn*, 365 F.3d at 1234. "This rule generally applies to all claims, including constitutional claims." *Id.* (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)).

A movant may avoid a procedural default either by showing (1) cause for and prejudice from the default, or (2) that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Lynn*, 365 F.3d at 1234 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Benevides does not invoke the "actual innocence" exception in his motion.

With respect to cause and prejudice, "to show cause for procedural default, [a movant] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [the movant's] own conduct." *Lynn*, 365 F.3d at 1235 (citing *Smith v. Jones*, 256 F.3d 1135, 1145 (11th Cir. 2001)). The movant must also show that "actual prejudice" resulted from the claims' not being raised on direct appeal. *Lynn*, 365 F.3d at 1234 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

Arguably, Benevides' has attempted to show that he was "actually

7

prejudiced" by claiming that the forfeiture violated the Eighth Amendment's protection against excessive fines.   However, Benevides has not, and cannot, argue that an objective factor prevented him from arguing that forfeiture was improper on direct appeal.   In addition, as noted below in more detail, the forfeiture money judgment did not violate the Eighth Amendment's ban on excessive fines because Benevides cannot satisfy the proportionality test.

### D.   MERITS

The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.   *Strickland v. Washington*, 466 U.S. 668, 686 (1984).   Ineffectiveness of counsel may be grounds for vacating a conviction if (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance.   *Strickland*, 466 U.S. at 687-88, 694.   "There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

For performance to be deficient, it must be established that, in light of

8

all the circumstances, counsel's performance was outside the wide range of professional competence.   *See Strickland*, 466 U.S. at 690.   When reviewing counsel's decisions, "the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"   *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).   Indeed, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'"   *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168 (1986)).

When advancing an ineffective assistance of counsel claim, a petitioner must identify the specific acts or omissions that he claims were not the result of reasonable professional judgment.   *Strickland*, 466 U.S. at 690.   Thus, when a petitioner makes an ineffective assistance of counsel claim, but merely advances vague and conclusory assertions absent any record citations, that claim may be dismissed without a hearing.   *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991).

### 1.    Ineffective Assistance Related to Forfeiture Stipulation

Benevides alleges that trial counsel was ineffective because he advised Benevides to stipulate to a forfeiture of $44 million in his plea agreement.

9

Specifically, Benevides contends that trial counsel did not advise him of the following:   (1) that "the statutory maximum for bank fraud is $1 million"; (2) the stipulated forfeiture was unconstitutionally excessive; and (3) the forfeiture amount was not derived from the charged offenses.   Benevides is wrong for the reasons that follow.

There is no statutory maximum for a forfeiture money judgment.   The statutory maximum that Benevides refers to is the statutory maximum for a **fine**.   Benevides claims that the forfeiture money judgment amounted to a fine under *United States v. Bajakajian*, 524 U.S. 321, 327 (1998). But Benevides is simply wrong.

In *Bajakajian*, the Supreme Court stated that the "proportionality test" is the appropriate test when analyzing whether a forfeiture amounts to an Excessive Fine.   The proportionality test simply provides that "the amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish…a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 2036.   Here, Benevides was charged with, and pled guilty to, conspiracy to commit bank fraud based on procuring approximately 20 different loans from various financial institutions totaling over $44 million.

10

Doc. cr-1.   Therefore, the stipulated forfeiture amount of $44 million is

directly proportional to the charged offense and does not amount to a

violation of the Excessive Fines Clause.

But this case is complicated by the history of all of the investigations

involving Benevides, including a separate 2009 civil forfeiture[5] case.   *See*

*United States v. Assets Described in "Attachment A" to the Verified Complaint for*

*Forfeiture In Rem*, 6:09-cv-1852-Orl-28GJK.   As trial counsel explains in his

affidavit, Benevides entered into a separate "Consent to Forfeiture" in the

2009 civil forfeiture proceeding.   *See* Exhibit A at 5.   In that "Consent to

Forfeiture", Benevides agreed to forfeit over $39 million in property.   *Id*.

Therefore, at first blush, since the amounts at issue are generally similar, the

2009 civil forfeiture and the instant criminal case appear to be related;

however, they were separate and distinct actions.   The issue was somewhat

further complicated because the United States agreed to accept the property

that was forfeited in the 2009 civil forfeiture as partial satisfaction of the 2013

criminal case, which left a balance of approximately $4.8 million.

---

[5] Benevides is foreclosed from objecting, or attacking the 2009 civil forfeiture
proceeding and the "Consent to Forfeiture" in this proceeding. *See Salom v.
United States*, No. 10-23394-Civ-Martinez, 2011 WL 13295440, *16 (S.D.
Florida April 25, 2011), citing *United States v. Udell*, 1997 WL 770390, *2 (9th
Cir. 1997).

Nevertheless, the cases were separate and distinct and the $44 million stipulated forfeiture in the 2013 criminal case was directly related to the loans at issue in the 2013 criminal case.   The fact that the United States agreed to accept the 2009 civil forfeiture as partial satisfaction does not, and should not imply that the matters were related.

Trial counsel also makes clear that the government's decision to give Benevides credit in the criminal forfeiture for the funds obtained in the separate 2009 civil case was a turning point in the negotiations.   This decision resulted in Benevides only being responsible for a money judgment of $4.8 million.   Trial counsel provided, "[t]he agreement with respect to the forfeiture action was a material part of the plea deal in the bank fraud case…Everything was explained to Mr. Benevides and it made sense to him then."   Exhibit A at 6.

As such, the stipulated forfeiture of $44 million cannot violate the Eighth Amendment's Excessive Fines Clause because it is directly proportionate to the charged offense.   Therefore, the statutory maximum fine of $1 million[6] is inapplicable.   Further, as trial counsel's affidavit illustrates,

---

[6] 18 U.S.C. § 3571(d) provides for an alternative fine based on gain or loss and specifically states, "If any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the

the decision to enter into this stipulation was sound trial strategy and cannot

be deemed ineffective assistance of counsel.

### 2. Ineffective Assistance Related to Sentence

Once again, as trial counsel's affidavit illustrates, the Benevides

investigation has a long, and perhaps tortured, history involving criminal and

civil investigations at the state and federal level.   Nevertheless, based on the

plea agreement, the plea colloquy administered by Judge Spaulding, and the

affidavit provided by trial counsel it is clear that both Judge Spaulding and

trial counsel advised Benevides that the ultimate sentence that would be

imposed would be decided solely by this Court.   In addition, any promise that

Benevides would actually have money and a Lamborghini returned to him if

he pled guilty is belied by the plea agreement, the consent to forfeiture in the

2009 case, and all of the surrounding circumstances.

First, Benevides plea agreement provides, "the sentence will be

determined solely by the Court, with the assistance of the United States

Probation Office.   Defendant further understands and acknowledges that any

discussions between defendant or defendant's attorney and the attorney or

---

defendant may be fined not more than the greater of twice the gross gain or
twice the gross loss."   Therefore, the statutory maximum fine for this offense
would actually be $88 million.

other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement."   Docs. cr- 48 at 21-22, 58 at 21-22.   In addition, the plea agreement included a recommendation for a guideline sentence.   Specifically, the plea agreement provides, "such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty."   *Id.* at 3.   Therefore, Benevides was on notice since he signed his plea agreement and adopted it at his change of plea hearing that no one knew what his sentence would be prior to this Court pronouncing it at sentencing.   Doc. cr-70 at 12.   And further, that Benevides could not withdraw his plea if his sentence was more severe than anticipated. *Id.* at 16.

During the change of plea hearing, Judge Spaulding methodically went through Benevides' plea agreement.   Specifically, the change of plea hearing included an extensive discussion regarding the possible penalties that Benevides faced, including the sentencing guidelines and the forfeiture

proceedings.   For example, the following exchange took place:

> Court:   Mr. Greene is a very experienced criminal defense attorney.   I'm confident he's given you his best estimate of the sentencing guideline range, but he can't know for sure until the report is done and the objections are ruled on.
>
> So it's important for you to understand that if the sentencing guideline range or the sentence is something different than you expect it to be, you would not be allowed to withdraw your guilty plea for that reason.
>
> Is that clear?
>
> Defendant:   Yes, ma'am.

*Id.* at 27.   Then, with regard to forfeiture, the following exchange took place:

> Court:   In paragraph 15 on page nine, you agreed to forfeit to the United States all money or property gained during the commission of the offense or used during the offense. Specifically, you agreed to entry of a money judgment against you in the amount of $44,059,585, which amount represents the proceeds obtained as a result of the conspiracy to commit bank fraud charged in Count One.
>
> You also individually and on behalf of the entities listed on the bottom of page nine and the top of page ten agree to withdraw your claims to assets that are subject to forfeiture in a case styled *United States versus Assets described in Attachment A*, case number 6:09-cv-1852-Orlando-28GJK.   And those assets are listed on page ten through the top of page 15 of the Plea Agreement.

*Id.* at 19.   After a brief exchange regarding a company that Benevides no longer had an interest in the Court continued:

> Court:   Mr. Benevides, an argument can be made under the law that if the person is required to forfeit money or property and then is also sentenced in a criminal case, that the combination of the two can violate certain Constitutional, statutory rights, including the excessive fine clause [sic] of the Constitution.
>
> Under the Plea Agreement, you are saying that you will give up all of those rights and arguments that could be made as a result of the extensive forfeitures plus the criminal sentencing.
>
> Have you had a chance to talk to your lawyers about those rights you're willing – you are giving up under this Plea Agreement?
>
> Defendant:   Yes.
>
> Court:      And are those rights you're willing to give up?
>
> Defendant:   Yes, ma'am.

*Id.* at 20-21.

Finally, trial counsel's affidavit also discussed Benevides' claims.   Trial counsel provided:

> As a matter of habit and custom, I do not, in any federal criminal case in which I represent a defendant, *ever* represent that he or she will receive a particular sentence or otherwise guarantee any particular outcome.   Rather, I am careful to advise my clients, in advance of any plea colloquy where the issue will also be addressed, that the sentence which will be imposed is a matter for the discretion of the trial judge, limited only by the record facts, federal statutes, and the United States Constitution.   I did not violate or deviate from that habit and custom when I represented Mr. Benevides.

16

> I never told Mr. Benevides that he would receive any
> particular sentence.   I carefully went over the applicable
> guidelines and statutes with him, told him what the maximum
> could be, what the probable guideline ranges were, and how we
> might work to get the range down.   I *may* have at some time told
> Mr. Benevides that, if his cooperation went as expected, he
> would receive a relatively short sentence in comparison to most
> people I represent in federal court and in comparison to what the
> government had been seeking before we made a plea deal.   But I
> did not make that statement in a vacuum or without explaining
> in detail what I meant.   I definitely told him he would be
> imprisoned, what my best estimates of the guidelines were, and
> how he could reduce his prion time, i.e., by rendering
> "substantial assistance."   Ultimately, the Probation Office
> scored the case as I expected and, had Mr. Benevides not
> violated the Plea Agreement[7], in my opinion he would have
> received a "relatively nominal" sentence.

Exhibit A, at 4 (emphasis in original).

With regard to the allegation that trial counsel informed Benevides that

he could keep a Lamborghini or any money, trial counsel provides in his

affidavit, "[i]n all events, when we were discussing whether he wanted to

make the plea deal, I never told Mr. Benevides he could keep anything.

Indeed, I told him I thought he would lose everything."   *Id.* at 7.

Based on all of the above, Benevides cannot establish deficient

---

7 The United States contended at sentencing that Benevides violated his plea
agreement and argued that he should not receive acceptance of responsibility.
This Court disagreed and awarded Benevides two levels for acceptance of
responsibility but the third level was not awarded based on the United States'
failure to request it.

performance by trial counsel.   At all times, trial counsel acted in Benevides'

best interest and negotiated a plea that gave Benevides the best chance at

success.   All of the decisions regarding the stipulated forfeiture and the

agreement to consent to that forfeiture potentially saved Benevides $40

million.   In addition, there is no evidence, apart from Benevides' self-serving

allegations, to suggest that trial counsel ever told Benevides that he would

receive any money or a Lamborghini.   Since Benevides cannot establish

deficient performance his claim of ineffective assistance of counsel must fail.

However, even if we assume for the sake of argument that trial

counsel's performance was deficient, Benevides cannot establish prejudice.

The decision to incorporate the 2009 "Consent to Forfeiture" into the instant

criminal case was a coup for Benevides.   Without that agreement by trial

counsel Benevides would have been on the hook for an additional $40 million.

Instead, Benevides was only on the hook for an additional $4.8 million as a

forfeiture money judgment.   With respect to the Lamborghini at issue, after

initially seizing it, the United States relinquished control of the Lamborghini

to other entities that had a superior interest in the vehicle.   *See* Exhibit A at

30.   Finally, all of the available evidence indicates that trial counsel never

promised Benevides that he would receive the Lamborghini or that the United

States would reimburse him $3 million.   In fact, even the idea that the United States would in effect refund or reimburse a defendant for pleading guilty is ludicrous.

Accordingly, the Court should dismiss Benevides' Motion.

## IV.   STATEMENT ON NEED FOR AN EVIDENTIARY HEARING

Benevides is not entitled to an evidentiary hearing.   A petitioner has the burden of establishing the need for an evidentiary hearing and he will be entitled to a hearing only if his allegations, if proved, would establish his right to collateral relief.   *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984) (en banc).   No hearing is required when the record establishes that a section 2255 claim lacks merit.   *See United States v. Lagrone*, 727 F.2d 1037, 1038 (11thCir. 1984).   Here, Benevides has not established any basis for an evidentiary hearing because his motion utterly lacks merit.   Accordingly, no evidentiary development is needed for this Court to resolve the purely legal issues presented by his motion.

THEREFORE, Benevides' section 2255 motion should be denied because the claims are not cognizable, Benevides has procedurally defaulted them, and they lack merit.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By:    *s/ Shawn P. Napier*
Shawn P. Napier
Assistant United States Attorney
USA No. 132
400 West Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
Facsimile:    (407) 648-7643
E-Mail:      Shawn.Napier@usdoj.gov

DATE:   October 26, 2018

20

**Pedro "Pete" Benevides v. United States     Case No. 6:17-cv-1944-Orl-31KRS**

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2018, a true and correct copy of the

foregoing document was filed in the CM/ECF system and provided by

electronic filing to the following participant:

Matthew R. McLain, Esq.
McLain Law, P.A.
2170 West State Road 434, Suite 216
Longwood, FL 32779

<p style="margin-left: 40%;">

*s/ Shawn P. Napier*
Shawn P. Napier
Assistant United States Attorney
USA No. 132
400 West Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
Facsimile:    (407) 648-7643
E-mail:   Shawn.Napier@usdoj.gov

</p>

21